Goldsmith Brothers v. Barber.

GOLDSMITH BROTHERS v. BARBER ET AL.

1. **Mortgage:** CONSTRUCTION OF: HUSBAND AND WIFE. Where a mortgage upon the homestead of the mortgagor, in which her husband joined, also embraced a stock of goods owned by the wife, and contained covenants to keep the value of the stock up to a certain amount, it was held that the husband was not bound by such covenants, and could not be held liable for their breach.

*Appeal from Lucas District Court.*

THURSDAY, APRIL 8.

*Stuart Brothers & Bartholomew,* for appellees.

*Mitchell & Penick,* for appellees.

ROTHROCK, J.—The defendants are husband and wife. W. Y. Barber, the husband, prior to 1873, was engaged in business as a merchant tailor. In that year he failed and was adjudged a bankrupt. About the time of his discharge in bankruptcy A. E. Barber, his wife, received some money from her relatives, and engaged in said business on her own account, her said husband being her managing agent. During the time the business was carried on by the wife, purchases of goods were made of the plaintiffs on credit. The goods were purchased in the name of the wife, and plaintiffs knew that the husband had no interest in the business. On the 1st of November, 1877, A. E. Barber was indebted to plaintiffs for goods in the sum of $895, for which plaintiffs held her promissory note. On that day the

plaintiffs' agent and traveling salesman made a sale to said A. E. Barber of goods to the amount of $305, on credit, and took her promissory note for that amount as well as the former indebtedness, aggregating $1,200. To secure the payment of this sum plaintiffs took a mortgage upon the homestead of the defendants, the title to which was in the wife, and said mortgage included the stock of merchandise then on hand. At the same time they took from said A. E. Barber a separate chattel mortgage upon the goods in the usual form. No payments were made upon said notes, and on March 1st, 1878, nearly all of said stock had been disposed of by defendants, so that there remained on hand goods of the value of about $60 only, which were delivered to the plaintiffs in partial payment of the notes and mortgage.

This action was commenced to foreclose the mortgage upon the real estate, and judgment was also demanded against W. Y. Barber, upon the alleged ground that when the mortgages were executed he undertook and guaranteed that the stock of goods should be kept up and maintained to the value of $1,000, for the protection of the plaintiffs, but that instead of so keeping up the stock he fraudulently appropriated the same to his own use, and concealed the goods for his own gain, to the damage and injury of the plaintiffs. Issue having been taken on the part of the defendants, there was a trial to the court upon written evidence and judgment and decree of foreclosure was rendered against A. E. Barber, as prayed, and the court found that W. Y. Barber was in "no way legally obligated to keep said mortgaged stock up to the value of $1,000, or any other sum, and is not liable for any failure so to do, nor for any disposition of said goods which may have been made." From this finding and judgment in favor of W. Y. Barber plaintiffs appeal.

The foregoing are the essential, issuable facts in the case. We are required to determine: 1st. Whether the court correctly found that W. Y. Barber was under no obligation to the plaintiffs to keep the stock up to $1,000 in value; and,

2d. Whether he fraudulently disposed of, or concealed, the goods to the plaintiffs' injury.

It is not claimed by the plaintiffs that the husband was in any manner interested in the business carried on by his wife. It was fully understood, when the debt was contracted and the mortgages taken, that the husband was only the managing agent of his wife, and that the business was not carried on by him in his wife's name, and for his benefit. This being conceded, any promise or undertaking by him to answer for her debt, to be valid, must be in writing. A verbal promise of this character would be within the statute of frauds. It is claimed, however, that W. Y. Barber did make a written promise to keep the value of the goods up to $1,000, and that said promise is contained in the mortgage upon the homestead, of which the following is a copy:

" *Know all Men by these Presents:*

" That A. E. Barber and W. Y. Barber, her husband, of Lucas county, State of Iowa, in consideration of the sum of twelve hundred dollars, in hand paid, do hereby sell and convey unto Goldsmith Brothers, of Philadelphia, State of Pennsylvania, the following described premises, situated in Lucas county, and State of Iowa, to-wit:

" Lot number ten (10), in block number one (1), in Newman & Vandeventer's addition to the town of Chariton; also all my stock of goods, consisting of cloths, cassimeres, trimming goods, etc., being the entire stock of merchandise kept by me at this time in a room on the south side of the public square, town of Chariton, together with all stock of every kind and character that may be added to said stock, reserving the privilege of selling the same by retail in usual trade, but agree to keep said stock up to $1,000 value, and warrant the title to the same against the lawful claims of all persons whomsoever.

" The intention being to convey hereby an absolute title in fee simple, including all the rights of homestead, to have and

to hold the premises above described, with all the appurtenances thereto belonging, unto the said Goldsmith Brothers, and to their heirs and assigns forever, *provided always*, and these presents are upon the express condition that if the said A. E. Barber, her heirs, executors or administrators, shall pay or cause to be paid to the said Goldsmith Brothers, their heirs, executors, or assigns, the sum of   *   *   *   *   *   "Signed the 1st day of November, A. D. 1877.

A. E. BARBER,
W. Y. BARBER."

A. E. Barber held the title to the homestead, and it was her debt which the mortgage was given to secure. Under the statute the homestead could only be incumbered by both husband and wife signing the same joint instrument. The stock of goods mentioned in the mortgage was also her individual property. This she could sell or incumber without the consent of her husband. Now when the goods are designated as "my stock of goods," etc., it must be understood that the reference to the ownership is made to A. E. Barber, the real owner. What follows in reference to the goods we think should have reference to A. E. Barber, and not to both defendants. When we take into consideration the facts attending the execution of these securities, and the circumstances surrounding the parties, this view is strengthened. The chattel mortgage which was executed at the same time contains the same stipulation, and also a further provision as to taking possession and selling on ten days notice. This was the instrument intended to be effectual as a lien upon the goods. This was not signed by the husband. The notes were not executed by the husband because it was understood that he was worth nothing. Considering these and other circumstances, in connection with the language of the homestead mortgage, and we think its fair construction is that A. E. Barber alone stipulated to keep the goods up to the value of $1,000.

Upon the other question, as to the fraudulent disposition of

the mortgaged goods by the husband, quite a number of witnesses were examined whose testimony we have carefully examined. The burden of proof was upon the plaintiffs to establish the alleged fraud, and we concur with the court below in finding that the plaintiffs have not established the fraud by a preponderance of evidence. We need not discuss the evidence. To do so properly it would be necessary to set it out at length, which would serve no useful purpose.

AFFIRMED.